**In re ARCTIC ENTERPRISES, INC., Debtor.**

**ARCTIC ENTERPRISES, INC., Plaintiff,**

**v.**

**HOPKINS SCHWINN CYCLERY, INC., Defendant.**

**Bankruptcy No. 3–81–0280.**
**Adv. No. 81–00243.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

June 30, 1982.

David Orenstein of Lindquist & Vennum, Minneapolis, Minn., appeared for plaintiff, Arctic Enterprises, Inc.

Faye Knowles of Arnold & McDowell, Minneapolis, Minn., appeared for defendant, Hopkins Schwinn Cyclery, Inc.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

JACOB DIM, Bankruptcy Judge.

The above entitled proceeding came on for trial on April 15, 1981 before the Honorable Jacob Dim, Bankruptcy Judge, on the complaint of the plaintiff Arctic seeking $3,916.36 allegedly due from the defendant. The defendant Hopkins alleges that no amount is owed as a result of a valid set off exercised by the defendant.

Based on the evidence adduced at the trial, the arguments of counsel, and the records and papers filed herein, the Court makes the following:

## FINDINGS OF FACT

1. The plaintiff Arctic is a manufacturer of snowmobiles and parts. On February 17, 1981 Arctic filed for relief under chapter 11 of the Bankruptcy Code.

2. The defendant Hopkins is a Minnesota corporation which became a dealer in Arctic merchandise in November, 1980.

3. When Hopkins became an Arctic dealer, it purchased seven snowmobiles from Arctic. As part of a sales promotion, Arctic offered rebates on its snowmobile. The amount of rebate offered to its dealers depended on the number and type of snowmobiles sold. Hopkins qualified for $1450.00 in rebates on sales during January and February, 1981. The rebates were credited to Hopkins on its "01" credit account.

4. Arctic maintained an advertising program by which Arctic would pay 75% of the cost of qualified advertising. Hopkins qualified for $8,297.25 under this advertising program during January and February 1981, and it was credited to Hopkins on its 01 credit account.

5. On February 11, 1981 Hopkins purchased two snowmobiles from Arctic. Kenneth Duneman, President of Hopkins, paid for the snowmobiles by check dated February 11, 1981 in the amount of $3,826.00. On February 13, 1981 Hopkins purchased parts from Arctic by check dated February 13, 1981 in the amount of $90.36.

6. At the time Hopkins issued the checks, it intended to pay for the purchases by check. No intention existed to stop payment on the checks.

7. Shortly after making the purchases, Mr. Duneman was informed that a credit balance existed in his favor with Arctic. Mr. Duneman ordered payment stopped on the checks so the credit balance could be used to pay for the purchases. As a new dealer, this was the first purchase by Hopkins of snowmobiles outside the original franchise agreement three months earlier. Hopkins was unfamiliar with the restrictions placed by Arctic on use of the credit account. Hopkins had no reason to believe that its action was in any way prohibited.

## CONCLUSIONS OF LAW

1. The sole issue raised by Arctic to challenge the transaction by Hopkins is

based on 11 U.S.C. § 553(a)(3) of the Bankruptcy Code. That subsection provides that a setoff is proper except to the extent that—

"(3) the debt owed to the debtor by such creditor was incurred by such creditor—

(A) after 90 days before the date of the filing of the petition;

(B) while the debtor was insolvent; and

(C) for the purpose of obtaining a right of setoff against the debtor."

2. It is indisputable that the provision in § 553(a)(3)(A) and (B) exist in this case. The debt was incurred when the purchase was made. Although payment was made by check, such payment was conditional. The condition failed and the debt dates back to the original purchase. Insolvency is presumed by § 553(c) and was not contested by Hopkins.

3. Arctic alleges that Hopkins intended, at the time the debt arose, to stop payment of the checks, thereby creating a debt to Arctic to offset against the credit balance owed to Hopkins. The critical determination is the intention of Hopkins at the time of purchase when the debt arose.

4. At that time, the intention of Hopkins was not to offset its debts. The undisputed testimony of the president of the corporation was that the checks were issued with no intention to stop payment on them. Only after discovering the credit balance later did Hopkins form the intention to stop payment. This was after the debt arose and the debt to the debtor was not incurred for the purpose of obtaining a setoff.

5. Lacking the necessary intention at the time of purchase, Hopkins does not come within the ambit of 11 U.S.C. § 553(a)(3). Arctic has not demonstrated that the setoff by Hopkins is voidable.

## ORDER

Now Therefore, IT IS ORDERED and ADJUDGED that the complaint of the plaintiff Arctic Enterprises, Inc. against the defendant Hopkins Schwinn Cyclery, Inc. is hereby dismissed with prejudice and the plaintiff Arctic Enterprises, Inc. shall take nothing by this action.